SHEPHERD, C.J.
This is an appeal from an Amended Final Judgment after appraisal. Because the trial court erred in applying the Florida Arbitration Code to “confirm” the appraisal award[1] in this case, we reverse and remand the case for further proceedings. See Citizens Prop. Ins. Corp. v. Cuban-Hebrew Congregation of Miami, 5 So.3d 709, 712 (Fla. 3d DCA 2009) (“The Florida Supreme Court has held that the Florida Arbitration Code is not applicable to appraisal cases.”)[2] (citing Allstate Ins. Co. v. Suarez, 833 So.2d 762, 763-66 (Fla.2002); Cotton States Mut. Ins. v. D’Alto, 879 So.2d 67, 70 (Fla. 1st DCA 2004); Nationwide Mut. Fire Ins. Co. v. Schweitzer, 872 So.2d 278, 279 (Fla. 4th DCA 2004)).
I.
Like so many others, this case has its genesis in Hurricane Wilma, which called upon South Florida on October 24, 2005. At the time of the storm, Citizens Property Insurance Corporation had issued a commercial policy of windstorm damage insurance, naming Mango Hill # 6 Condominium Association, Inc., as the named insured on each of the seven buildings comprising the condominium property. On January 12, 2006, Mango Hill provided Citizens with a contractually required notice of hurricane loss under the policy. Citizens adjusted the loss and before the end of 2006, paid $39,900.10 to the Association on the loss after accounting for deductibles under the policy.[3]
On February 2, 2007, Mango Hill presented a supplemental claim in the sum of $846,049.46 through a public adjuster, Willie Gonzalez of Elite Claims Consultants, Inc. Citizens requested the Association to submit a sworn proof of loss to support the supplemental claim. The sworn proof of loss finally arrived at Citizens’ offices on October 25, 2007. In the meanwhile, on April 12, 2007, after another inspection of the property by Citizens produced no further recourse under the policy, Mango Hill demanded appraisal of its supplemental claim.[4] Although protesting it “owe[d] no *1228 further funding” to Mango Hill, Citizens nevertheless agreed to appoint an appraiser, “reserving all rights or defenses of Citizens Property Insurance Corporation under its policy of insurance.” Citizens also forwarded to Mango Hill a proposed joint Memorandum of Appraisal, seeking to “identify!] the issues and procedures” under which the appraisal would occur. Mango Hill did not respond to Citizens’ request. Citizens assumed the appraisal would be limited to the items identified in the supplemental claim.
The appraisal process did not effectively commence until after Citizens received the Association’s sworn proof of loss on October 25, 2007. The Association appointed Frank Inguanzo as its appraiser; Citizens appointed Ken Daidone. Accompanied by Mango Hill’s public adjuster, the appraisers for the Association and Citizens inspected the property three times between February 20 and July 31, 2008. The Association’s demand during these inspections focused almost exclusively on its desire that Citizens pay to replace the roofs on each of the seven buildings in the condominium complex. Although disputed by Inguanzo, Ken Daidone and his assistant, David Charles, averred in affidavits filed of record that they were told “interior damages were not an issue.”
On September 19, 2008, in the midst of the appraisal process, Willie Gonzalez delivered a revised supplemental claim to Ken Daidone. Prepared by Gonzalez at the direction of Inguanzo, the revised supplemental claim nearly doubled the Association estimate of loss to $1,664,850.23. The new estimate included exterior damages never before presented to Citizens, as well as items of damage located in the interior units. Daidone contacted George Torrente, whom he and Inguanzo recently had selected as the umpire, and asked for a stay of the proceedings to allow further investigation. Citizens, now through counsel, made the same demand and requested a supplemental sworn proof of loss and examinations under oath as well. All of these demands were rebuffed by Inguanzo and Torrente. On November 9, 2008, Tor-rente submitted a proposed award in the amount of $1,058,122.52. Two days later, Inguanzo signed the proposed award. Daidone learned about the award upon his return from a scheduled three-week vacation.
Citizens asserts numerous defenses to enforcement of the award against it, including that Mango Hill failed to comply with its post-loss obligations under the insurance policy, failed to allow Citizens’ appraiser a full inspection of the claimed loss, and failed to cooperate, as required by the insurance contract, by refusing to tender an amended sworn proof of loss, additional documentation, and appear for an examination under oath after nearly doubling its claim during the course of the appraisal process.
Citizens also claims the appraisal panel itself engaged in irregularities, unfairness or fraud in the submission of the award. It alleges Mango Hill’s appointed appraiser was effectively a front for its public adjuster, the appraisers failed to meet at the conclusion of their respective investigations to discuss and attempt to agree on the amount of the loss, the appraisal panel exceeded its authority when it determined an amount of loss greater than the amount originally claimed by Mango Hill, and, finally, that the court failed to consider its coverage defenses to payment of the award. The court accepted Mango Hill’s argument that these defenses were sub *1229 sumed in the appraisal process or waived by Citizens’ agreement to appraisal. Mango Hill is incorrect in each of these assertions.
II.
The differences between arbitration and appraisal are well defined in this state. First and foremost, while an agreement to arbitrate ordinarily encompasses the disposition of the entire controversy between the parties, an agreement for appraisal extends merely to the resolution of the specific issues of actual cash value and “amount of loss.” Preferred Ins. Co. v. Richard Parks Trucking Co., 158 So.2d 817, 820 (Fla. 2d DCA 1963) (quoting 5 Am Jr.2d Arbitration and, Award,, now found at 4 Am.Jur.2d Alternate Dispute Resolution, § 3 (2013)); FTI Int’l, Inc. v. Cincinnati Ins. Co. 339 Ill.App.3d 258, 274 Ill. Dec. 135, 790 N.E.2d 908, 910 (2003) (citing 15 Couch on Insurance 3d § 209:4 (1999)). Second, the appraisal process is an informal one. Suarez, 833 So.2d at 765; FTI Int'l, 274 Ill.Dec. 135, 790 N.E.2d at 911 (citing 15 Couch on Insurance 3d § 209:8). There is no requirement that appraisers be sworn. Hanover v. Lewis, 28 Fla. 209, 10 So. 297, 302 (1891); Pearson v. Sanderson, 28 Ill.App. 571, 573 (Ill.App.Ct.1888); Wodjak v. Greater Phila. Cablevision, Inc., 550 Pa. 474, 707 A.2d 214, 219 (1998). Appraisers generally are chosen for and expected to act on their own skill and knowledge relating to the matters being appraised. Allstate Ins. Co. v. Martinez, 790 So.2d 1151, 1152 (Fla. 3d DCA 2001); Fla. Farm Bureau Cas. Ins. Co. v. Sheaffer, 687 So.2d 1331, 1333 (Fla. 1st DCA 1997), disapproved, on other grounds, Suarez, 833 So.2d at 762. There is no obligation for appraisers to give formal notice of their activities to the parties or counsel, or to hear evidence. Cas. Indem. Exch. v. Yother, 439 So.2d 77, 80 (Ala.1983); Collison v. Deisein, 265 A.2d 57, 59 (Del.Ch. 1970); Sheaffer, 687 So.2d at 1333; Olympia & York 2 Broadway Co. v. Produce Exch. Realty Trust, 93 A.D.2d 465, 468, 462 N.Y.S.2d 456 (N.Y.A.D.1983) (citing In re Delmar Box Co., 309 N.Y. 60, 63, 127 N.E.2d 808 (N.Y.1955)). They even may engage in ex parte investigation, so long as they ultimately meet in good faith for the purpose of ironing out individual differences. Martinez, 790 So.2d at 1152; Sheaffer 687 So.2d at 1333; Richard Parks Trucking Co., 158 So.2d at 820; see also Aetna Cas. & Sur. Co. v. Ins. Com’r, 293 Md. 409, 445 A.2d 14, 16 (1982); Silverman v. Fireman’s Fund Am. Ins. Cos., 96 Nev. 30, 604 P.2d 805, 806 (1980); Wodjak, 707 A.2d at 219; 15 Couch on Insurance §§ 209.9, 213.65. Finally, all issues other than those contractually assigned to the appraisal panel are reserved for determination in a plenary action. Paradise Plaza Condo. Ass’n Inc. v. Reinsurance Corp. of N.Y., 685 So.2d 937, 940 (Fla. 3d DCA 1996) (stating the phrase “right to deny the claim” in an appraisal clause identical to the one before us is the functional equivalent of the Hanover clause that the [appraisers] “shall not decide the [carrier’s] liability”); see also Johnson v. Nationwide Mut. Ins. Co., 828 So.2d 1021 (Fla.2002); Citizens Prop. Ins. Corp. v. River Manor Condo. Ass’n, — So.3d -, 38 Fla. L. Weekly D820, 2013 WL 1441294 (Fla. 4th DCA 2013); Citizens Prop. Ins. Corp. v. Mango Hill Condo. Ass’n 12, 54 So.3d 578 (Fla. 3d DCA 2011); Sunshine State Ins. Co. v. Rawlins, 34 So.3d 753 (Fla. 3d DCA 2010); Kendall Lakes Toumhomes Developers, Inc. v. Agricultural Excess & Surplus Lines Ins. Co., 916 So.2d 12 (Fla. 3d DCA 2005); 4 Am.Jur.2d Alternate Dispute Resolution § 3.
Arbitrations, on the other hand, are quasi-judicial proceedings. Cassara v. Wofford, 55 So.2d 102, 106 (Fla.1951); *1230 Martinez, 790 So.2d at 1152; Tassinari v. Layer, 189 So.2d 651, 653 (Fla. 2d DCA 1966). Although not conducted with the same degree of formality as a judicial proceeding, arbitration proceedings are impressed with the same procedural safeguards. Tassinari, 189 So.2d at 653. These safeguards are codified in substantial part in the Florida Arbitration Code. §§ 682.01-22, Fla. Stat. (2012). Under the Florida Arbitration Code, each party is entitled to a full hearing in the presence of every other party, unless such right is waived by agreement or conduct. § 682.06, Fla. Stat. (2012); Cassara, 55 So.2d at 106. The arbitrators must meet together in each session, and may not engage in independent investigation of the thing in issue. Tassinari, 189 So.2d at 652. The Arbitration Code guarantees to each party not only the right to notice of each hearing session, but also the right to counsel, the opportunity to present evidence, and the right to cross-examine witnesses. § 682.06; Cassara, 55 So.2d at 106. Finally, unlike appraisal, the arbitration panel may adjudge the case only on what is presented to them in the course of the proceeding. § 682.06; Cassara, 55 So.2d at 106; see also 4 Am.Jur.2d Alternate Dispute Resolution § 3.
III.
Applying these principles, it becomes at once clear the trial court improperly pretermitted Citizens’ ability to present its defenses to Mango Hill’s property insurance claim. Appraisal exists for a limited purpose — the determination of “the amount of the loss.” By “confirming” the appraisal award, the trial judge effectively overruled Citizens’ well-preserved objections to entry of judgment. The trial judge acknowledged this fact in his oral announcement granting Mango Hill’s ill-fated motion for confirmation of the appraisal award, when he stated he was “not saying that anyone breached.” Proper procedure required that Citizens’ defenses be addressed, not by a motion to confirm appraisal award under the Florida Arbitration Code, but rather by motion for summary judgment or trial. As the factual and procedural history of this case demonstrates, this is not a mere formality. The Florida Arbitration Code is not applicable to appraisal awards.
We reverse and remand this case for further proceedings in compliance with this opinion.

. "Appraisal award” is really a misnomer because the appraisal panel only determines the amount of loss, not an insured’s entitlement to any damages, prominently including coverage issues such as whether the loss falls within the insuring clause of the policy, and whether the loss was caused by a covered peril.

. Had the parties brought this binding precedent to the attention of the trial judge at the time it announced its ruling from the bench in August 2010, we feel confident considerable time and judicial labor would have been saved.

. Citizens evaluated the loss at $131,469.57. The condominium consists of seven buildings. Each building has a separate coverage limit. The hurricane deductible is three percent of the coverage limit for each building. Thus, the calculated deductible under the policy was $91,569.47.

.The appraisal clause in the policy is commonly appearing the standard clause used in the industry at the time. It reads:
If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to an umpire. A decision agreed to by any two will be binding. Each party will:
a. Pay its chosen appraiser; and
*1228 b. Bear the other expenses of the appraisal and umpire equally.
If there is an appraisal, we will still retain our right to deny the claim.